UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| MARK A. CHRISTENSEN, | ) | CASE NO. 1:11 CV 1837 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| JUDGE RUSSELL B. WISEMAN, *et al.*, | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff Mark A. Christensen filed this action against Crawford County Common Pleas Court Judge Russell B. Wiseman, Crawford County Common Pleas Court Magistrate Mary E. Holm, Crawford County Juvenile Court Judge Steven Eckstein, Attorney Shane M. Leuthold, Attorney Brad Starkey, Attorney Patrick T. Murphy, Debra Jane Rucklos fka Debra Christensen, Crawford County Children Services Administrator Billie Jo Carr, Crawford County Children Services Case Worker Devon Sipes, the Crawford County Commissioners, Crawford County Children Services, Crawford County Clerk of Court Sue Seever, Crawford County Deputy Court Clerk Heather Slayton, Crawford County Deputy Court Clerk Julie Hiatt, Crawford County Deputy Court Clerk Rita Brow, Crawford County Deputy Court Clerk Sheila Lester, Crawford County Deputy Court Clerk Sherry Powell, Crawford County Prosecutor Stan Flegm, the Galion Police Department, Galion Police Chief Brian Saterfield, Galion Police Officer Marc Rodriquez, Galion Police Officer Eric Bohack, the City of Galion, Galion City Manager Eugene Toy, Norma K. Hoover, Denis Hoover, Lisa Hoover, Delaware Juvenile Court Magistrate Frank P. Darr, Delaware Juvenile Court Judge Kenneth Spicer, Attorney Sandra Disantis, Central Ohio Mental Health Center, Central Ohio Mental Health Center Physician Dr. Early, Adolescent Psychiatrist Larry

Simpson, Starr Commonwealth, Martin Mitchell, Andrew House Supervised Visitation Center, Andrew House Director Donald Chenoweth, Delaware City Schools, Delaware City Schools Director of Student Services Sharon K. Bechtel, Delaware City School Superintendent Paul Craft, Ohio Supreme Court Office of Disciplinary Counsel, Ohio Supreme Court Disciplinary Counsel Jonathan E. Coughlan, Ohio Supreme Court Assistant Disciplinary Counsel Amy Stone, Ohio Supreme Court Chief Justice Eric Brown, Ohio Third District Court of Appeals, Ohio Third District Court of Appeals Presiding Judge Vernon Preston, Ohio Third District Court of Appeals Judge Richard Rogers, Ohio Third District Court of Appeals Judge Stephen R. Shaw, Dorothy Smith, Deb Smith, the State of Ohio, Ohio Governor John Kasich, the United States Department of State, United States Secretary of State Hillary Clinton, the Federal Bureau of Investigation ("FBI"), FBI Director Robert Mueller, Ohio Attorney General Mike Dewine, Delaware County Children Services, Delaware County Children Services Director Mona Reilly, Foster Parent Sara Dillingrer, and United States Attorney General Eric Holder.  In the Complaint, Plaintiff asserts numerous claims pertaining to legal matters that arose between 2005 and 2009.  He seeks monetary and injunctive relief.

## I.  Background

Plaintiff Mark Christensen ("Plaintiff") and Debra Rucklos fka Debra Christensen ("Debra"), formerly husband and wife, adopted special needs children including Ryan, B.C., W.C. and K.C.  Debra had two children from a prior relationship, Z.S. and K.S., who also lived with the Plaintiff and Debra in Galion, Ohio.

In October, 2005,  Ryan physically attacked Plaintiff which resulted in Ryan's arrest and indictment on charges of attempted murder.  Plaintiff alleges that while he was still in a coma, Debra washed the clothing he was wearing at the time of the attack to destroy evidence against Ryan.  Ryan was released on bond on April 10, 2006.  Two days later, Plaintiff obtained a civil protection order against Ryan.  Plaintiff contends Debra coerced witnesses to change their testimony, which led to a plea deal on a reduced charge of felonious assault.  Ryan was sentenced

to five years of intensive community control on August 27, 2007.

While Ryan was awaiting trial for the attempted murder of Plaintiff, the Plaintiff himself was arrested and charged with domestic violence. He claims he was watching television in the family room on January 2, 2007 while his sons, W.C. and B.C. played chess. He states his other son, K.C. was wrestling with Z.S. until it was time for K.C. to go to bed. Plaintiff claims Z.S. attempted to get Plaintiff to wrestle with him by removing Plaintiff's slippers and throwing them across the room. Plaintiff claims he responded by attempting to get Z.S's wrist band off. As they wrestled, Z.S. punched Plaintiff hard in the stomach. Plaintiff indicates he sent Z.S. to his room for the rest of the evening as punishment and resumed watching television. W.C. followed Z.S. to the room they shared, and B.C. remained with Plaintiff. Approximately an hour and half later, Z.S.'s sister, K.S. entered the family room and announced to Plaintiff that the police were on their way. She told him he would go to jail "for beating [Z.S.] up." ECF No. 1 at 37. Plaintiff called Debra at work and she spoke to Z.S. The police arrived before Debra got home. Officers Rodriquez and Bohach questioned Z.S., K.S. and W.C. The children reported that Plaintiff struck Z.S. five times with a closed fist and kicked Z.S. in the head. Plaintiff denied that allegation. The officers, however, noted a red area on the side of Z.S.'s face. Plaintiff was arrested and charged with domestic violence. He was eventually acquitted by a jury on July 6, 2007.

Shortly after the incident with Z.S., Debra filed a civil domestic violence action against Plaintiff. She obtained a Civil Protection Order against him on January 19, 2007.

Debra filed for divorce from Plaintiff on January 30, 2007. She retained attorney Patrick Murphy to represent her. Judge Russell B. Wiseman presided over the matter. Plaintiff objects to numerous aspects of the divorce. He indicates Debra is the niece of Crawford County Municipal Court Judge James Hoover. He contends therefore that all Crawford County Judges, including Judge Wiseman, should have recused themselves from hearing the case and should have appointed a visiting judge from outside of the county. He claims Debra and her attorney broke into his residence and took computer equipment and papers in an attempt to conceal documentation

pertaining money given to Debra's mother, Norma Hoover.  He also alleges Debra manipulated the children to provide unfavorable information to the Guardian Ad Litem in order to gain a financial advantage in the divorce.  Plaintiff contends his Attorney, Shane Leuthold, conspired with Debra's attorney, the Galion police, the children's Guardian Ad Litem, and Judge Wiseman to achieve a result favorable to Debra.

A juvenile court dependency matter was also initiated with regard to B.C. in January 2007.  Plaintiff provides very few facts about this hearing.  This dependency action was largely based upon the fact that a sibling of B.C. was previously found by the same court to be an abused child.  B.C. therefore was alleged to be dependent based upon Ohio Revised Code § 2151.04(D). *See Christensen v. Leuthold*, No. 3-09-14, 2009 WL 5064580 (Ohio App. 3 Dist. Dec. 28, 2009). Attorney Leuthold entered an appearance on behalf of Plaintiff the day before the hearing and requested a continuance due to a time conflict he had in another case. The juvenile court denied this request stating that Plaintiff had received his summons to appear for this hearing three weeks prior to the hearing and the mother and the child's guardian ad litem would not waive the statutory time period for the adjudicatory hearing.  B.C. was found to be dependent.  For the disposition, the court determined that B.C. should remain with his mother, that there was no need for services from the agency, and that the temporary restraining order prohibiting Plaintiff from having contact with the child be made permanent, subject to further review. Plaintiff claims Attorney Leuthold told him he would appeal the juvenile court's decision because the court should not have proceeded with the matter when Mr. Christensen refused to waive his right to counsel.  Attorney Leuthold, however, never filed an appeal on behalf of Mr. Christensen.  *Id.*

Because Plaintiff could not return to the marital home, he began to occupy a unit in one of his rental properties.  He indicates he had four roommates who shared an apartment with him, and a tenant who rented another unit in the same building.  He states that the tenant did not have many electronic appliances, so he loaned the tenant a television and a computer.  He claims Officer Rodriquez came to his apartment on August 30, 2007 and told one of Plaintiff's roommates that the

-4-

tenant called to report a break-in at his unit and the theft of the electronic equipment.  The Officer asked the roommate if he could come into the apartment and look for the electronics.  The roommate agreed to request.  Plaintiff claims he was working in his apartment at the time of the alleged break-in and did not hear anything coming from the tenant's apartment.  When he went to the tenant's apartment, he discovered that the tenant had moved out.

Plaintiff's divorce from Debra became final on February 5, 2008.  Due to the protection orders in place, Debra was given full custody of the children.  Plaintiff was given supervised visitation.  He claims the Andrews House would not agree to supervise the visits, and he was therefore deprived of contact with his children.  Debra moved with the children to Delaware County and enrolled them in school.  She told the school administrators that Plaintiff was abusive to the children and was not to have contact with them.  He discovered the comments in the school records and asked that they be removed.  The school refused to make the change.  Plaintiff claims the children began to do poorly in school and exhibit behavior problems.  His attempts to regain custody of the children were unsuccessful.

Plaintiff contends Debra manipulated divorce proceedings and attempted to tarnish his reputation to avoid repayment of a loan she received from Plaintiff's business and to conceal her embezzlement of funds from B.C.'s Medicaid trust account.  He alleges his company loaned Debra half of the money she needed to purchase a hair salon, and that money was supposed to be secured with land owned by the Hoover family.  Upon the filing of the divorce, he discovered that the land he believed to be collateral for the loan was transferred to Debra's brother.  He believes he was not properly compensated in the divorce.  He also contends Debra needed to retain custody of the children to conceal funds she fraudulently obtained from B.C.'s Medicaid trust.  An action was brought against her by the Trustee of B.C.'s Medicaid payback trust for over billing the trust for expenses.  Plaintiff indicates Debra paid the trust back to avoid additional legal problems.

Plaintiff claims Debra attempted to discredit him by orchestrating a sexual misconduct allegation against him.  In May 2008, a teenaged boy who shoveled snow from Plaintiff's driveway

accused Plaintiff of  sexual misconduct.  The boy began to shovel the driveway in January 2007.
He told Plaintiff he lived in the neighborhood.  Plaintiff claims that in March 2008, the boy came
to the house and told Plaintiff he had the day off from school.  He asked Plaintiff to take him to
breakfast and used Plaintiff's computer.  Later, the boy sent Plaintiff an email saying he thought
of Plaintiff as a boyfriend.  Plaintiff states he tried to call the boy, to discuss the email, but number
was out of service.  Plaintiff was served with a search warrant on May 4, 2008 by Galion Police.
The officers told him the teen made a complaint suggesting Plaintiff showed him pornographic
images on his computer and engaged in inappropriate sexual conduct with him.  Detective Shaffer
told Plaintiff in August 2008 that they were pursuing charges against him.  Plaintiff does not
indicate if the charges were ever filed or whether the matter was resolved.  He claims his son, B.C.,
told him the boy was a family friend that lived in Delaware near Debra.

Plaintiff alleges Debra then orchestrated rape charges against two of their children within
months of the  rape allegations against Plaintiff.  First, her son, Z.S., accused Ryan of raping him
on several occasions in 2008.  Ryan was indicted on December 19, 2008 and charged with multiple
counts of rape.  He was convicted on June 8, 2009 and was sentenced to 18 years in prison.
Twenty-two days after Ryan's arrest on rape charges, Debra accused B.C. of raping her.  Charges
were filed against him in Juvenile Court.  It is unclear what happened with those charges.

Finally, Plaintiff claims business associate Kevin Alspach tried to defraud him.  He contends
Alspach tried to lure him into a business deal that proved to be a scam.  He refused to go through
with the deal and was sued by Mr. Alspach on February 5, 2010.  That action was dismissed on
March 17, 2010.  Plaintiff does not provide any other detail about this incident.

The Complaint contains 11 causes of action and 35 claims for relief.  In Count I, which
pertains to the divorce proceedings, he asserts claims for fraud, divorce fraud, and judicial
kidnaping.  In Count II, which pertains to the 2005 attempted murder charge and the divorce,
Plaintiff asserts claims for felony breaking and entering, falsification of police reports, tampering
with evidence in a criminal proceeding and hiding witnesses.  Count III, which references all of the

incidents, contains claims for false arrest and detainment, hiding witnesses, conduct unbecoming of a police officer, police harassment, Police threats, perjury of a police officer, false search warrant, false seizure of property, conspiracy to utilize a juvenile in a felony set up, violation of civil rights, and conspiracy to hide evidence.  Count IV, asserted against various law enforcement Defendants, contains claims for failure to protect civil rights, police harassment, failure to protect from police harassment.  Count V contains references to the divorce and Debra's move to Delaware County and asserts claims for judicial misconduct, violation of Ohio parental rights, placing children in danger, and violation of the International Parental Kidnaping Crime Act of 1993.  Count VI references information given to the Delaware schools by Debra about Plaintiff, and asserts claims for slander, defamation and illegal use of unfactual evidence.  Count VII pertains to moneys taken from Plaintiff and Plaintiff's business by Debra and members of her family, and includes a claim for fraudulent transfer of property to avoid judgment liens.  Count VIII concerns the business deal with Mr. Alspach and the divorce, and contains a claim for conspiracy to defraud property. Count IX concerns the incident with the teenaged boy who shoveled Plaintiff's walk, and includes a claim for false use of records to prejudice government renting programs.  Count X contains a legal malpractice claim against Plaintiff's attorney.  Count XI asserts claims under 42 U.S.C. § 1985. He requests as relief that this Court order custody of his adopted children be given to him, that the domestic violence and domestic relations cases be overturned and heard anew by this Court, that all Civil Protection Orders be rescinded, that a Civil Protection Order be granted to him against the Galion Police Department, that all of his criminal convictions be overturned, that the law licenses of the attorney Defendants be suspended, that the Judicial Defendants be removed from office, that all records pertaining to him be removed from his children's school records, that a restraining order be granted against the Hoover family, that the finding of dependency in the case involving B.C. be expunged, that the Children Services Defendants be suspended from work, that a "gag order" be placed on each Defendant, and that a judicial lien be placed in property taken by the Hoover family. Plaintiff also requests monetary damages.

## II.  Standard for Dismissal

While *pro se* pleadings are liberally construed and held to a less stringent standard than one drafted by an attorney, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court may, at any time, *sua sponte* dismiss a Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a Complaint are so totally "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999)(*citing Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)).  Allegations of this nature lack "legal plausibility necessary to invoke federal subject matter jurisdiction." *Id.* at 480.  The Court must be satisfied of its own jurisdiction to hear the claims presented and may address the lack of jurisdiction at any time during the course of an action. *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 890 (6th Cir.1998); *Franzel v. Kerr Mfg. Co.*, 959 F.2d 628, 630 (6th Cir.1992). Where subject-matter jurisdiction is found to be lacking, dismissal of claims is required. Fed.R.Civ.P. 12(h)(3).

## III.  Analysis

Even construing the Complaint in the most liberal light, the Court is compelled to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).  Of the 33 claims asserted, only eight of them can plausibly be construed as arising under federal law; specifically his claims for false arrest and detainment, false search warrant, false seizure of property, and violation of civil rights found in Count III, his claim for failure to protect civil rights found in Count IV, his claim for violation of the International Parental Kidnaping Crime Act, 18 U.S.C. §1204 in Count V, and his claim for conspiracy in violation of 42 U.S.C. § 1985 found in Count XI.  Although not expressly stated as a separate cause of action, Plaintiff also claims Crawford County Children Services Workers Billie Jo Carr and Devon Sipes failed to follow the proper administrative procedures when conducting an investigation into the allegations of dependency of B.C.  The Court liberally construes this as a claim for denial of procedural due process.  These claims are asserted

-8-

against 28 Defendants who are immune from suits for damages, and 31 who are not subject to suit in a civil rights action.  He attacks state court judgements and asks this Court to reverse those judgments and hear the cases anew.  The Court cannot grant this relief.  Furthermore, even if the Court could entertain these matters, they would be time barred as they are brought well beyond the expiration of the applicable statute of limitations period.  Finally, even if all of these problems were not fatal to his case, his only federal causes of action fail to state any plausible claim for relief.

### A. **42 U.S.C. § 1983**

Several of Plaintiff's claims can be construed as violations of his constitutional rights.  Plaintiff's claims for false arrest and detainment, false search warrant, and false seizure of property arise, if at all, under federal law as a violation of the Fourth Amendment.  His claim for failure to protect civil rights can be construed either as a denial of substantive due process under the Fourteenth Amendment, or as a violation of 42 U.S.C. § 1986.  His allegations that Carr and Sipes failed to follow proper administrative procedures is construed as an alleged denial of procedural due process.  His claim for violation of civil rights, although undefined, would also arise, if at all, under the United States Constitution   Because the Constitution does not directly provide for damages or other relief, Plaintiff must proceed under one of the civil rights statutes which authorizes a civil remedy for alleged constitutional violations.  *Sanders v. Prentice-Hall Corp. Sys*, 178 F.3d 1296 (6th Cir. 1999).  As no other statutory provision appears to present an even arguably viable vehicle for the assertion of Plaintiff's claims, the Court construes them as arising under 42 U.S.C. § 1983.  **1. Parties Immune from Damages**

Plaintiff brings claims against the State of Ohio and four of its agencies or officials, five United States Government agencies or officials, nine state court judges, three prosecutors, and six court clerks.  All of these Defendants are immune from damages in a civil rights action.

### a. **State of Ohio**

Plaintiff names as Defendants the State of Ohio, The Ohio Supreme Court Office of Disciplinary Counsel, and the Ohio Third District Court of Appeals.  The Eleventh Amendment is

an absolute bar to the imposition of liability upon state agencies. *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005). Moreover, Plaintiff brings claims against Ohio Governor John Kasich and Ohio Attorney General Mike Dewine in their official capacities. An action against a state official in his official capacity is the equivalent of an action against the state he represents. These Defendants are all immune from damages under the Eleventh Amendment.

### b. <u>The United States Government Agencies and Officials</u>

Plaintiff also brings claims against the United States Department of State, Secretary of State Hillary Clinton, the FBI, FBI Director Robert Mueller, and the United States Attorney General Eric Holder. The United States, as a sovereign, cannot be sued without its prior consent, and the terms of its consent define the court's subject matter jurisdiction. *McGinness v. U.S.*, 90 F.3d 143, 145 (6th Cir. 1996). A waiver of sovereign immunity must be strictly construed, unequivocally expressed, and cannot be implied. *U.S. v. King*, 395 U.S. 1,4 (1969); *Soriano v. U.S.*, 352 U.S. 270, 276 (1957). The United States and federal government officials cannot be sued under 42 U.S.C. §1983, as this statute applies specifically to states. *Bivens*[1] provides an analogous cause of action against individual officers acting under color of federal law alleged to have acted unconstitutionally. *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 70 (2001). It, however, does not support an action against the United States government or any of its agencies. *Id*; *see Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484-86 (1994). The United States has not waived sovereign immunity for *Bivens* claims. *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir.1991)(stating that a *Bivens* claim cannot be asserted against the United States government or its employees in their official capacities).

Furthermore, Plaintiff does not state whether he is bringing claims against Hillary Clinton, Robert Mueller, or Eric Holder in their official or individual capacities. To the extent Plaintiff asserts these claims against the Defendants in their official capacities, they are also immune from suit. Claims asserted against federal government officials in their official capacity are construed

---

[1]     *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

against the United States, and therefore barred by sovereign immunity.

### c. __Judges__

Plaintiff names nine state court judges as Defendants.  Judicial officers are generally absolutely immune from civil suits for money damages.  *Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997).  They are accorded this broad protection to ensure that the independent and impartial exercise of their judgment in a case is not impaired by the exposure to damages by dissatisfied litigants.  *Barnes*, 105 F.3d at 1115.  For this reason, absolute immunity is overcome only in two situations: (1) when the conduct alleged is performed at a time when the Defendant is not acting as a judge; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all subject matter jurisdiction of the court over which he or she presides.  *Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116.  *Stump*, 435 U.S. at 356-57.  A judge will be not deprived of immunity even if the action he or she took was performed in error, done maliciously, or was  in excess of his or her authority.  Plaintiff contends that Judge Wiseman, Magistrate Holm, Judge Eckstein, Magistrate Darr, and Judge Spicer did not recuse themselves from his cases, and issued unfavorable orders and judgments which he believes to be contrary to Ohio law.  Plaintiff also contends Justice Brown, and Court of Appeals Judges Vernon Preston, Richard Rogers, and Stephen Shaw did not issue opinions which were favorable to him.  These Defendants are also immune from suit in a §1983 action.

### d. __Prosecutors__

Similarly, prosecutors are also entitled to absolute immunity  from damages for initiating a prosecution and in presenting the state's case.  *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Pusey v. Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993).  A prosecutor must exercise his or her best professional judgment both in deciding which suits to bring and in conducting them in court.  *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006).  This duty could not be properly performed if the prosecutor is constrained in making every decision by the potential consequences of personal liability in a suit for damages.  *Id.*  These suits could be expected with some frequency,

-11-

for a defendant often will transform his resentment at being prosecuted into the attribution of improper and malicious actions to the State's advocate.  *Imbler*, 424 U.S. at 424-25; *Skinner*, No. 05-2458, 2006 WL 2661092, at *6-7.  Absolute immunity is therefore extended to prosecuting attorneys when the actions in question are those of an advocate." *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir.2003).

Immunity is granted not only for actions directly related to initiating a prosecution and presenting the State's case, but also to activities undertaken "in connection with [the] duties in functioning as a prosecutor." *Id.* at 431; *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir.2002). It also reaches beyond the criminal process to conduct in civil proceedings where a government attorney is operating in an enforcement role in "initiating ... judicial proceedings," *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir.2000), or "undertak[ing] the defense of a civil suit," *Al-Bari v. Winn*, No. 89-5150, 1990 WL 94229, at *1 (6th Cir. July 9, 1990).  In this instance, the challenged actions of Crawford County Prosecutor Stan Flegm are intimately associated with the judicial phase of Plaintiff's prosecutions.  Flegm is entitled to absolute immunity from damages.

In addition, Jonathan Coughlin and Amy Stone represent the Ohio Supreme Court on Attorney disciplinary matters.  Plaintiff's claims against these Defendants arise from their dismissal of disciplinary charges Plaintiff attempted to bring against his attorney.  Plaintiff has no constitutional right to have another person prosecuted for an offense.  *See Howard ex rel. Estate of Howard v. Bayes*, 457 F.3d 568, 575 (6th Cir. 2006).  Even if such a right existed, Coughlin and Stone, would be immune from actions concerning their decision to bring an enforcement action. *Cooper*, 203 F.3d at 947.

### e.  **Court Clerks**

Finally, Plaintiff names six court clerks as Defendants.  Court clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an

integral part of the judicial process.  *Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988).  Whether an act is judicial in character does not depend on whether it is discretionary.  *Id.*  Rather, immunity applies to all acts of auxiliary court personnel that are "basic and integral parts of the judicial function," unless those acts are done in the clear absence of all subject matter jurisdiction of the court.  *Mullis v. U.S. Bankruptcy Court, Dist of Nevada*, 828 F.2d 1385, 1390 (9th Cir. 1987).  Acts committed in error or in excess of jurisdiction will not forfeit immunity, even if it results in "grave procedural errors."  *Id.*

Plaintiff does not clearly set forth the actions of the Court Clerks which form the basis of his claims against them.  He states only that, in connection with the various domestic abuse charges asserted in the domestic violence and domestic relations actions,  they "defame[d] plaintiff by use of this fictitious perjury created as a smoke screen, so co-defendant Debra Christensen-Hoover could escape repaying the plaintiff the business loans made to her and her family... ."  ECF No. 1 at 64.  It appears that the claims against the court clerks are based on their acceptance of disputed documents for filing and maintenance of the court's files.  These actions are all integral parts of the judicial process and within the subject matter jurisdiction of their courts.  *Sindram v. Suda*, 986 F.2d 1459, 1461 (D.C. Cir. 1993)(citing the Sixth Circuit's decision in *Foster*).[2]  Court clerks Sue Seever, Heather Slayton, Julie Hiatt, Rita Brow, Sheila Lester, and Sherry Powell are therefore entitled to absolute quasi-judicial immunity.

### 2. __Parties Not Subject to Suit in this Civil Rights Action__

In addition to those Defendants who are immune from suits for damages, Plaintiff names

---

[2]    *See Fish v. Murphy*, No. 01-3601, 2001WL 1355611(6th Cir. Oct. 26, 2001)(finding the clerk of court was entitled to absolute immunity even though he stamped the wrong date on the document which resulted in the dismissal of an appeal); *Harris v. Suter*, No. 00-3309, 2001 WL 111586 (6th Cir. Feb. 1, 2001)(holding clerk was entitled to absolute immunity for actions associated with filing or failing to file a document); *Burton v. Mortimer*, No. 99-1956, 2000 WL 876517 (6th Cir. June 22, 2000)(finding the denial of free copies of the file and a delay in forwarding the record to the state court of appeals which results in an erroneous dismissal for lack of jurisdiction and are both quasi-judicial functions which entitle the clerk to absolute immunity); *see also Foster*, 864 F.2d at 417 (the act of issuing an order of a judge is a quasi-judicial function entitled to immunity).

as Defendants eighteen private parties, three individual United States government officials, and ten county government agencies or municipalities. These Defendants are not subject to suit in this civil rights action.

### a. **Private Parties**

Plaintiff names as Defendants private attorneys Shane Leuthold, Brad Starkey, Patrick Murphy, and Sandra Disantis. He also includes Dr. Early, the Central Ohio Mental Health Center, Adolescent Psychiatrist Larry Simpson, Starr Commonwealth, Martin Mitchell, Andrew House Supervised Visitation Center, Andrew House Supervised Visitation Center Director Donald Chenoweth, Dorothy Smith, Deb Smith, Sara Dillinger, Norma Hoover, Denis Hoover, Lisa Hoover, and Debra Christensen. To establish a prima facie case under 42 U.S.C. § 1983, Plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Generally to be considered to have acted "under color of state law," the person committing the conduct in question must be a state or local government official or employee. A private party may be found to have acted under color of state law to establish the first element of this cause of action only when the party "acted together with or ... obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). An individual may also be considered a state actor if he or she exercises powers traditionally reserved to a state. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974).

Although Plaintiff includes lengthy paragraphs of legal rhetoric concerning these Defendants, there are no facts in his Complaint which reasonably suggest they can be considered to be state government actors for purposes of a civil rights action. A private attorney is not considered a state actor under 42 U.S.C. § 1983. *Washington v. Brewer*, No. 91-1935, 1991 WL 243591 (6th Cir. Nov. 21, 1991); *see also Polk County v. Dodson*, 454 U.S. 312, 321 (1981). Likewise, merely being a participant in litigation or cooperating with a state attorney during a legal

-14-

proceeding does not make a private party a co-conspirator or joint actor with the state.  *Moldowan v. City of Warren*,  578 F.3d 351, 395 (6th Cir. 2009); *Dennis v. Sparks*, 449 U.S. 24, 28 (1980).  Other Defendants have no apparent connection to a government action.  These individuals are not subject to suit for constitutional violations.

### b. United States Government Officials

While *Bivens* can be brought against individual Federal government officials for their actions, Plaintiff has not stated a viable claim for relief against United States Secretary of State Hillary Clinton, FBI Director Robert Mueller or United States Attorney General Eric Holder.  In order to state a claim under *Bivens*, a plaintiff must allege that the individual defendant was personally involved in the alleged deprivation of the plaintiff's constitutional rights. *See Nwaebo v. Hawk-Sawyer*, No. 03-3801, 2003 WL 22905316, at *1 (6th Cir. Nov. 28, 2003) (citing *Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976); *Hall v. United States*, 704 F.2d 246, 251 (6th Cir.1983)); *Kesterson v. Fed. Bureau of Prisons*, No. 02-5630,  2003 WL 1795886 (6th Cir. April 2, 2003); *see also Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir.2003) (to be subject to *Bivens* liability, a defendant must have had "direct, personal participation" in the constitutional violation).  Plaintiff merely asserts that these individuals failed to protect him in some theoretical way from the various legal actions filed against him in state court.  These allegations, alone, are insufficient to assert a plausible *Bivens* claim against these Defendants.

### c. Municipalities and Municipal Officers

Plaintiff names a number of Municipalities and Municipal Officers who supervise departments and agencies within the Municipalities, including the City of Galion, Galion City Manager Eugene Toy, Delaware County Children Services, Delaware County Children Services Director Mona Reilly, the Crawford County Commissioners, Crawford County Children Services, the Galion Police Department, the Galion Police Chief, the Delaware City Schools, and Delaware City Schools Superintendent Paul Craft.  As a rule, local governments may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a *respondeat superior*

theory of liability. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691(1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. A municipality can therefore be held liable when it unconstitutionally "implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers." *Id.* at 690; *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir. 1999). There is nothing in the Complaint that even remotely suggests a policy or custom of these Municipalities that caused the deprivation of a constitutionally protected right of the Plaintiff.

Similarly, Municipal Officers cannot be held liable for the actions of their employees under a theory of *respondeat superior*. *See Monell*, 436 U.S. at 691. To be held liable for a claim for damages, the supervisor must have encouraged the specific misconduct or in some way directly participated in it. *See Monell*, 436 U.S. at 690-91; *Hays v. Jefferson County, Ky.*, 668 F.2d 869 (6th Cir. 1982); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Liability cannot be based upon a mere failure to act or the right to control employees. *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir.1999) (citing *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (1989)). *Id.* In order for liability to attach to any of the supervisors named as Defendants, Plaintiff must allege that they did more than play a passive role in the alleged violations or show mere tacit approval of the actions of their subordinates. *Id.* There are no allegations in the Complaint against any of these individual supervisors that suggest they directly participated in the conduct giving rise to Plaintiff's federal claims.

### 3. **Procedural Bars**

In addition to the Defendants who are immune or not subject to suit in this action, Plaintiff's claims face two procedural bars which are fatal to his case. First, he attacks the state court judgments against him and asks this Court to reverse those judgments and issue them anew in his favor. The Court lacks jurisdiction to grant this relief. Moreover, all of his claims are barred by

the applicable statute of limitations.  For these reasons alone, dismissal is required.

### a. __Rooker-Feldman Doctrine__

Although the claims in Plaintiff's Complaint are not well defined , it appears from the relief he is requesting that he is challenging several state court judgments, including the determination of dependency of Plaintiff's son B.C., the issuance of protection orders, and the determination of custody and visitation in his divorce.  He claims the state courts were incorrect in their conclusion that he was abusive to his children.  He also contends the state court was incorrect in its decision concerning the repayment of monies given to the Hoover family.  He requests as relief that this Court rescind the custody order of the Domestic Relations Court and award custody to him, overturn the domestic violence and domestic relations cases and hear them anew, rescind  all Civil Protection Orders, rescind the finding of dependency in the case involving B.C., and overturn the division of property in the domestic relation case, award him funds taken by the Hoover family.

United States District Courts do not have jurisdiction over challenges to state court decisions even if those challenges allege that the state court's action was unconstitutional.  *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923).  Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari.  *Id.*  Under this principle, generally referred to as the Rooker-Feldman Doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the party's claim that the state judgment itself violates his or her federal rights.  *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994).  Federal jurisdiction cannot be invoked merely by couching the claims in terms of a civil rights action.  *Lavrack v. City of Oak Park*, No. 98-1142, 1999 WL 801562, at *2 (6th Cir. Sept. 28, 1999); *see Valenti v. Mitchell*, 962 F.2d 288, 296 (3d Cir.1992).

The United States Sixth Circuit Court of Appeals has applied two elements to a Rooker-Feldman analysis.  First, in order for the Rooker-Feldman doctrine to apply to a claim presented in

federal district court, the issue before the court must be inextricably intertwined with the claim asserted in the state court proceeding.  *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998); *see Tropf v. Fidelity National Title Insurance Co.*, 289 F.3d 929, 937 (6th Cir. 2002).  "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment."  *Catz*, 142 F.3d at 293.  The Rooker-Feldman doctrine applies when the party losing his case in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself.  *Coles v. Granville*, 448 F.3d 853, 857-59 (6th Cir. 2006).  Second, the Rooker-Feldman doctrine precludes a district court's jurisdiction where the claim is a specific grievance that the law was invalidly or unconstitutionally applied in plaintiff's particular case as opposed to a general constitutional challenge to the state law applied  in the state action.  *Id.*

In the present action, Plaintiff's claims directly attack the state courts' decisions concerning B.C.'s dependency, the issuance of protection orders, and the award of custody and division of property in the divorce.  All of the allegations in Complaint concern specific grievances that the facts did not support those judgments and the law was incorrectly applied to Plaintiff's cases.  They are clearly predicated on his belief that the state courts were mistaken in rendering their decisions against him. Furthermore, Plaintiff requests as relief that the state court judgments be reversed, and new judgments be issued in his favor.  Any review of the constitutional claims asserted in this context would require the court to review the specific issues addressed in the state court proceedings against him.  This court lacks subject matter jurisdiction to conduct such a review or grant the relief as requested.  *Feldman*, 460 U.S. at 483-84 n. 16; *Catz,* 142 F.3d at 293.

### b.  Statute of Limitations

In addition, all of Plaintiff's claims are time barred.  It is apparent on the face of the Complaint that the statute of limitations for bringing a §1983 claim expired long before Plaintiff filed this action.  *LRL Properties v. Portage Metro Housing Authority*, 55 F. 3d 1097, 1105 (6th Cir.

1995).  Ohio's two year statute of limitations for bodily injury applies to §1983 claims.  Ryan was charged with attempted murder in October 2005.  That was when Plaintiff alleges Debra destroyed evidence.  The incident with Z.S. that led to Plaintiff's arrest on domestic violence charges took place in January 2007.  It concluded in July 2007.  B.C. was declared dependent in February 2007.  Plaintiff's tenant's reported his  electronic equipment had been stolen in August 2007.  Plaintiff's divorce was final in February 2008.  He was accused of inappropriate contact with a teenaged boy in March 2008.  A search warrant was executed on his apartment in May 2008.  The most recent incident of which Plaintiff complains involved the lawsuit with Kevin Alspach, which took place in March 2009.  This action was filed on August 31, 2011, well beyond the expiration of the statute of limitations period for bringing any civil rights claims under 42 U.S.C. § 1983.

### 4.  Failure to state a Federal Cause of Action

Finally, even if Plaintiff's Complaint could overcome the procedural bars set forth above, he has not stated a plausible federal claim.  His pleading is very disjointed.  He discusses portions of each event as if the Court were familiar with them.  In additional, all of his legal claims are listed with no real connection to any of the facts set forth.  Giving the Complaint an extremely generous reading, the Court can construe claims arising from the Fourth, and Fourteenth Amendments.  The allegations in the Complaint, however, do not suggest Plaintiff has met even the basic elements of these causes of action to establish federal jurisdiction over these matters.

### a.  Fourth Amendment Claims

Plaintiff's claims of false arrest and detainment, false search warrant, false seizure of property could be construed to arise under either state tort law or under the Fourth Amendment.  The Court will liberally construe them as Fourth Amendment claims.  Because of the rambling manner in which the Complaint is set out, however, it is extremely difficult to determine which event each claim is referencing.  Claim III where these causes of action are asserted is 23 pages long and includes allegations pertaining to all of the incidents mentioned in the Complaint.  It appears that the false arrest claim refers to Plaintiff's arrest on domestic violence charges in

connection with the January 2007 incident involving Z.S. It could, however, be referring to Ryan's arrest on rape charges, B.C.'s arrest on rape charges, or to some other incident where Plaintiff believes he or one of children was detained. Similarly, it appears the false search warrant claim and false seizure of property claim pertain to the search of Plaintiff's residence after the teenaged boy entered the complaint of sexual misconduct against him. It could, however, refer to his allegations that Debra and her attorney entered his residence and confiscated documents which would have established the debt owed by the Hoovers.

With regard to Plaintiff's arrest on domestic violence charges in 2007, he claims he was acquitted of the charges by a jury and therefore his arrest was "false." He contends three of his children conspired to bring charges against him by manufacturing allegations and physical evidence of abuse, and that the officers responding to the call did not thoroughly investigate his claims of innocence.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 543 (6th Cir.2002). To prevail on a Fourth Amendment claim asserting a false arrest, a civil rights plaintiff must show that he was arrested without probable cause. *Parm v. Shumate*, 513 F.3d 125, 142 (5th Cir.2007). Indeed, the existence of probable cause is an absolute bar to a §1983 claim arising out of a search, seizure, detention or prosecution regardless of the lack of good faith or malicious motives on the part of the law enforcement officers. *See Sykes v. Anderson*, 625 F.3d 294, 308-310 (6th Cir. 2010); *Bergren v. City of Milwaukee*, 811 F.2d 1139, 1142 (7th Cir.1987); *Kaylor v. Rankin*, 356 F.Supp.2d 839, 854 -855 (N.D. Ohio 2005). Probable cause is the knowledge of facts sufficient to justify a reasonable person in the belief that there are reasonable grounds for prosecuting an action. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir.2005) The testimony of more than one witness, which is corroborated in some aspects by physical evidence, may create probable cause. *See Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001).

-20-

Plaintiff does not address directly the question of probable cause.  Instead, he seems to suggest that his acquittal demonstrates false arrest.  He also alleges that while the police questioned family members present in the home, they did not conduct a more thorough investigation.  The Constitution does not guarantee that only the guilty will be arrested, or that the investigation of a claim of innocence will be error-free.  *See Baker v. McCallan*, 443 U.S. 137, 145 (1979).  If it did, §1983 would provide a cause of action for every defendant acquitted and every suspect released.  *Id*.  In addition, eventual acquittal does not negate probable cause for the arrest.  The state's failure to prove guilt beyond a reasonable doubt at trial does not mean that it did not meet the lesser probable cause standard—a reasonable belief that an offense has been committed and that the criminal defendant committed the crime. *Baker*, 443 U.S. at 145.  Therefore, as a matter of law, Plaintiff's ultimate acquittal, alone, does not render his arrest illegal.

To the extent Plaintiff is challenging Ryan's or B.C.'s arrests as false, he cannot do so in this action. He lacks standing to assert a claim for violation of Ryan's or B.C.'s rights.  Claims asserted in a § 1983 action are personal to the injured party.  *Shepard v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2003). Plaintiff lacks standing to assert violations of the constitutional rights of others. *See Id.*

Moreover, Ryan was convicted of the charges.  A prisoner may not raise claims under 42 U.S.C. § 1983 if a judgment on the merits of those claims would affect the validity of his conviction or sentence, unless the conviction or sentence has been set aside.  *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Heck v. Humphrey*, 512 U.S. 477, 486 (1994).  The holding in *Heck* applies whether plaintiff seeks injunctive, declaratory or monetary relief.  *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401 at *1 (6th Cir. May 5, 1998).  Any claim challenging the validity of the charges against Ryan would call his conviction into question.  Ryan's conviction has not been declared invalid by either an Ohio state court or a federal habeas corpus decision.  Even if Plaintiff could assert claims on Ryan's behalf, this claim could not proceed.

Plaintiff also raises claims for "false search warrant" and "false seizure of property."  The

-21-

Fourth Amendment does not preclude all searches or seizures that are attributable to the government, only those that are unreasonable. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989). *Skinner*, 489 U.S. at 619. Whether the intrusion is reasonable "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985). With respect to the search of his residence in March 2008 pursuant to a warrant, Plaintiff fails allege why the search warrant was false. He provides no information concerning the search, except that he was not permitted to be in the apartment at the time it occurred, and that he believes the officers went into the basement which was not specifically listed as an area that could be searched. There is no explanation of what property was taken in the search or how the seizure was "false."

To the extent the false seizure of property could be referring to Plaintiff's allegation that Debra and her attorney took documents from him to gain an advantage in the divorce, the claim cannot be asserted in a civil rights action. The Fourth Amendment protects individuals from governmental intrusions. *Skinner*, 489 U.S. at 619. Debra and her attorney are private parties and there are no allegations that suggest they were acting on behalf of the government.

### b. <u>Procedural Due Process</u>

Plaintiff also alleges Devon Sipes and Bille Jo Carr did not follow the proper administrative procedures when conducting an investigation into the charges of dependency of B.C. The Court again liberally construes this as an attempt to assert a claim for denial of procedural due process. A state, however, does not have a federal due process obligation to follow all of its procedures. *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir.1993). "[S]uch a system would result in the constitutionalizing of every state rule, and would not be administrable." *Id.*; *see Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). A state officer's failure to follow state administrative procedures is a question solely of state law.

### c. <u>Substantive Due Process</u>

Plaintiff's claim for failure to protect civil rights can be construed as an assertion of

-22-

violation of substantive due process.  This claim is asserted against the United States Government, Hillary Clinton, the Federal Bureau of Investigation, Robert Mueller, Eric Holder, Mike Dewine, the State of Ohio, and John Kasich.  Plaintiff attempted to contact them during the course of his legal troubles and they did not intervene on his behalf.  Aside from being asserted against Defendant who are immune from suit, this assertion fails to satisfy basic elements needed to support a substantive due process claim.

The Due Process Clause generally confers no affirmative right to governmental aid, "even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."  *DeShaney v. Winnebago County Dep't of Soc. Services*, 489 U.S. 189, 198 (1989).  If the Due Process Clause does not require the government to provide its citizens with particular protective services, it follows that the government cannot be held liable under the Due Process Clause for injuries that could have been averted had it chosen to provide them. As a general matter, a State's failure to protect the Plaintiff against private actions simply does not constitute a violation of the Due Process Clause.

Two exceptions have been recognized to this general rule.  The first, or "special relationship" exception, occurs when the state restrains an individual so as to expose the individual to harm. *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 910-11 (6th Cir.1995) ("A special relationship can only arise when the state restrains an individual.")  The second, or "state created danger" exception, occurs when the state through some affirmative conduct places the individual in a position of danger.  Neither of these exceptions would apply to Plaintiff's case.  He has not alleged that he was placed in physical danger by any of these Defendants.  His allegation that they declined to intervene in his legal troubles does not rise to the level of a constitutional violation.

### d.  Violation of Civil Rights

Finally, Plaintiff claims in general terms that the Defendants violated his civil rights.  Apart from the constitutional rights addressed above, there is no indication of which rights Plaintiff

-23-

believes were violated.  Principles requiring generous construction of *pro se* pleadings are not without limits.  *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985).  A Complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements.  *See Schied v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988).  District courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments.  *Beaudett*, 775 F.2d at 1278.  To do so would "require ...[the courts] to explore exhaustively all potential claims of a *pro se* plaintiff, ... [and] would...transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."  *Id.* at 1278.  Moreover, Plaintiff's failure to identify a particular legal theory in his Complaint places an unfair burden on the Defendants to speculate on the potential claims that Plaintiff may be raising against them and the defenses they might assert in response to each of these possible causes of action.  *See Wells v. Brown*, 891 F.2d at 594.  The Court has already given Plaintiff's disjointed assertions a very generous construction.  The Court will not, however, speculate on other claims that could be asserted under the facts alleged in the pleading.

### B.  International Parental Kidnaping Crime Act, 18 U.S.C. §1204

In addition to his civil rights claims, Plaintiff contends that Judge Wiseman, Judge Eckstein, Debra, her attorney, and other Defendants violated the International Parental Kidnaping Crime Act, by granting Debra custody of the children, limiting his contact with them, and allowing her to move with them to Delaware County.  The statute provides:

> (a) Whoever removes a child from the United States, or attempts to do so, or retains a child (who has been in the United States) outside the United States with intent to obstruct the lawful exercise of parental rights shall be fined under this title or imprisoned not more than 3 years, or both.

18 U.S.C. § 1204(a).  First, this is a criminal statute.  There is no suggestion that it provides a private cause of action.  In addition, the statute prohibits removing a child from the United States

-24-

or keeping a child out of the United States to interfere with lawful parental rights.  The children have not been removed from this country.  The use of this statute is misplaced.

### C.  <u>42 U.S.C. § 1985</u>

Plaintiff also asserts a conspiracy claim under 42 U.S.C. § 1985.  To state a claim for conspiracy to deprive a person of equal protection under the law pursuant to 42 U.S.C. § 1985 , a plaintiff must allege: (1) a conspiracy of two or more persons; (2) with the purpose to deprive, directly or indirectly, a person or class of persons of equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) which causes injury to the person or property of the plaintiff or deprivation of any right or privilege of a citizen of the United States. *Vakilian v. Shaw,* 335 F.3d 509, 518 (6th Cir.2003) (citing *United Bhd. of Carpenters & Joiners of Am. v. Scott,* 463 U.S. 825, 828-29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)).  A plaintiff fails to state an adequate claim if his allegations are premised upon mere conclusions and opinions. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987). Plaintiff must make sufficient factual allegations to link two alleged conspirators in the conspiracy and to establish the requisite "meeting of the minds" essential to the existence of the conspiracy. *McDowell v. Jones,* 990 F.2d 433, 434 (8th Cir.1993) (holding that plaintiff failed to state a claim for conspiracy pursuant to § 1985 for failure to allege a meeting of the minds).  In addition, the acts that allegedly "deprived the Plaintiff of equal protection must be the result of class-based discrimination." *Vakilian,* 335 F.3d at 518 (citing *Newell v. Brown,* 981 F.2d 880, 886 (6th Cir.1992)).

Plaintiff certainly alleges numerous parties were involved in a conspiracy, but his allegations do not suggest a violation of federal law.  A conspiracy claim under Section 1985 requires that the conspiracy have the purpose of class based discrimination.  Plaintiff does not contend the Defendants intended to discriminate against him on the basis of his race, gender, religion, or national origin.  He claims the Defendants conspired against him to assist Debra to attain a favorable divorce settlement because Debra's uncle was a municipal court judge.  This allegation does not meet the requirements for a claim under Section 1985.

-25-

**D.  42 U.S.C. § 1986**

Plaintiff's claim for failure to protect civil rights could also be construed under 42 U.S.C. § 1986.  Section 1986 imposes liability on those individuals who have knowledge of any of the wrongs prohibited by Section 1985, yet fail to prevent them.  Without a violation of Section 1985, there can be no violation of Section 1986.  Because Plaintiff has failed to state a claim under Section 1985, his claims for relief under Section 1986 must also be dismissed.

**E.  State Law Claims**

All of the other claims Plaintiff asserts arise, if at all, under state tort law.  Supplemental jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial.  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966).  The Court, however, may exercise discretion in hearing state law matters.  *Id.* at 726.  In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed.  *Id.*  Having dismissed Plaintiff's federal law claims, this Court declines jurisdiction to hear Plaintiff's state law claims.  Because Plaintiff asserted only state law claims against Delaware City Schools Student Services Director Sharon Bechtel, she is also dismissed from this action.

## IV.  Conclusion

Accordingly, this action is dismissed.  The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]

IT IS SO ORDERED.

 */s/Dan Aaron Polster 9/20/11*
DAN AARON POLSTER
UNITED STATES DISTRICT JUDGE

---

[3]    28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.